Plaintiffs Jordan appeal from a judgment for defendants Tinnin in a statutory action in the nature of ejectment.
The property in dispute is 16.75 acres located in the northeast portion of the SW 1/4 of the SE 1/4 of Section 36, Township 20, Range 9, in Clay County. It is bounded on the north and the east respectively by the north and east lines of the forty and is bounded on the south by Wesobulga Creek and on the west by a branch running into the creek. The question is, who has the legal title thereto? The trial court held for defendants. We reverse and remand.
In 1967, Ada Farrow conveyed to C.M. Jordan, Sr., and his wife Hattie, plaintiffs, the following described lands:
"17 acres more or less described as follows to-wit:
 Beginning at the Northwest corner of land of H. Farrow deceased Estate on the North line of the NW 1/4 of the SE 1/4 of Section 6 Township 20 Range 9; thence West along the north line of said forty to the Northeast corner of land of grantee Hattie M. Jordan; thence South along the line of lands of grantees C.M. Jordan Sr. and wife Hattie M. Jordan to Wesobulga Creek in the North portion of the SW 1/4 of the SE 1/4 of said Section 36 Township 20 Range 9; thence in an easterly direction along the north line of said Wesobulga Creek to the West line of land of H. Farrow deceased Estate; thence North into and continuing along the line of said Estate of H. Farrow; deceased land into said NW 1/4 of the SE 1/4 of said Section 6
Township 20 Range 9; to a corner of the lands of said Estate of Hunter Farrow deceased; thence West 20 *Page 750 yards more or less to another corner in lands of the Estate of H. Farrow deceased thence north to the North line of said NW 1/4 of the SE 1/4 of Section 6
Township 20 Range 9 at the starting point; all in the NW 1/4 of the SE 1/4 and a small part on the South line in the SW 1/4 of the SE 1/4 all in Section 6
Township 20 Range 9; and being bounded as follows to-wit: On the North by the North line the NW 1/4 of SE 1/4 of of [sic] Section 6 Township 20 Range 9 and by lands of the Kimberly-Clark Newsprint Company which is on the north side of this land on the West by lands of C.M. Jordan Sr. and wife Hattie M. Jordan and on the South by Wesobulga Creek and on the East by lands of the Estate of H. Farrow deceased; situated in Clay County Alabama." [Emphasis supplied.]
A year later in 1968, Ada Farrow conveyed to Tava Horn the following described lands: 30 acres on the east side of the SW 1/4 of the SE 1/4, Section 36, Township 20, Range 9. The deed specifically excluded property described by language almost identical to that used to describe the property covered by the deed to the Jordans.
In 1973, by mesne conveyances, title to the property conveyed by Ada Farrow to Tava Horn passed to C.V. Tinnin and his wife Doris, defendants. Their deed and the intermediate deeds contained the same exclusion which the deed to Tava Horn contained.
Subsequent to the execution of the deed to the Jordans in 1967, they went into possession of the property in dispute. They bushhogged the property and on two or three occasions cut timber on the land, at least once while Ada Farrow was still living.
After the execution of the deed to the Tinnins in 1973, the Tinnins ousted plaintiffs by erecting a fence along the north line of the disputed property. The Jordans then quit cutting timber on the property.
In 1974, the Jordans brought suit to recover possession of the property in question and to recover damages for the Tinnins' detention of the property.
The trial court found that the description in the deed to the Jordans contained patent ambiguities and failed to identify and circumscribe the land so as to enable the court to determine its location. The court mentioned, in particular, evidence relating to the location of Wesobulga Creek as confirming the existence of ambiguities. The court further found that the deed to the Tinnins conveyed title to the disputed property. The court awarded "right, title, and possession" of the disputed lands to the Tinnins. The Jordans appeal.
(No issue has been made, on this appeal, as to the propriety of the judgment's awarding title to defendants in such an action as this, particularly, in view of the lack of any counterclaim. Therefore, we pretermit any discussion thereof.)
In an action in the nature of ejectment brought under Tit. 7, § 938, Code of Alabama 1940, a plaintiff may recover possession of lands by showing legal title from a grantor in possession, from a common source, or by an unbroken chain of title from the government. Atlas Subsidiaries of Florida, Inc. v. Kornegay,288 Ala. 599, 602, 264 So.2d 158 (1972). Both the Jordans and the Tinnins claim title to the disputed property from a common source, Ada Farrow.
Therefore, the issue before the trial court was whether the Jordans had legal title to the disputed property by virtue of the deed from Ada Farrow. The trial court held, in effect, that the deed under which the Jordans claimed title was void for uncertainty in its description of the property which it purported to convey.
It is clear from the evidence that there were errors or ambiguities in the description in the deed to the Jordans. The issue before this Court is whether the evidence supports the holding of the trial court that the errors or ambiguities made it impossible for the trial court to determine the location of the property which the grantor Ada Farrow intended to convey to the Jordans. *Page 751 
On this appeal, the Tinnins do not attempt to support the trial court's finding that evidence relating to the location of Wesobulga Creek confirmed the existence of ambiguities. They do argue that the trial court's judgment is supported by the following errors or ambiguities in the Jordans' deed:
 (1) the description sometimes locates the property in Section 6 and once in Section 36;
 (2) the description states that the deed conveys "17 acres more or less," while the land which the Jordans claim under the deed is about 30 acres, (The land in dispute (16.75 acres) is only part of that which the Jordans claim under the deed.);
 (3) the "Northwest corner of land of H. Farrow deceased Estate" is uncertain: and, (4) the "West line of land of H. Farrow deceased Estate" is uncertain.
What the trial court meant by its statement that the evidence relating to the location of Wesobulga Creek confirmed the existence of patent ambiguities in the deed is not at all clear. There was conflicting testimony concerning the exact location of Wesobulga Creek, but the evidence was undisputed that Wesobulga Creek runs east and west through the SW 1/4 of the SE 1/4 of Section 36, Township 20, Range 9. That is all that is relevant to the issues in this case. The problem here is not determining the exact location of the creek. Furthermore, even the trial court found the location of the creek certain enough to use in describing the land which it awarded to the Tinnins. We find no basis in this respect for the trial court's holding that the deed was void for uncertainty.
The only error or ambiguity which is apparent on the face of the deed is the confusion between Section 6 and Section 36. It is clear that the property described could not be in both Section 6 and Section 36. Although a patent ambiguity cannot be made certain by parol proof of the intention of the parties, the court may consider the circumstances surrounding the parties to enable it to determine what property the deed was intended to convey. Reynolds v. Lawrence, 147 Ala. 216, 219,40 So. 576 (1906).
The evidence is undisputed that the description could relate only to land in Section 36. In particular, neither the Jordans nor the H. Farrow Estate, whose lands are said to border that described in the deed, owned any land in Section 6. Furthermore, the evidence indicates that Ada Farrow owned no land in Section 6. But if "6" is read "36," the description corresponds to the actual situation in Section 36 at the time the deed was executed. Even Mr. Tinnin admitted on cross-examination that "Section 6" should have been "Section 36." For these reasons, we find no ground for concluding that the deed was void for uncertainty on this basis.
Likewise, the discrepancy between the number of acres stated in the description and the number of acres claimed by the Jordans in accordance with their survey is no basis for declaring the deed void for uncertainty. For, as this Court has previously held,
 ". . . where a conveyance of land contains a definite description by subdivisions, or metes and bounds, or both, the addition of a statement of the number of acres, more or less, is merely cumulative matter of description and in construing the deed as written, the particular description controls."
Bankhead v. Jackson, 257 Ala. 131, 134, 57 So.2d 609 (1952).
The Tinnins' contention that the "Northwest corner" and the "West line" of the land of the H. Farrow Estate are uncertain is not supported by the evidence.
It is clear from the description in the Jordans' deed that the "Northwest corner" of the H. Farrow Estate was located on the north line of the NW 1/4 of the SE 1/4 of Section 36. A survey by Chester Smith showed the "Northwest corner" to be located on that forty line 429.92 feet west of the NE corner of the forty. Mr. Smith testified that he found an iron pin at that point. His *Page 752 
testimony is undisputed. He further testified that he selected the points for conducting his survey after an investigation of records in the courthouse and the tax office.
[EDITORS' NOTE: SKETCH IS ELECTRONICALLY NON-TRANSFERRABLE.]
Mr. Smith's survey located the "West line" of the H. Farrow Estate on the east line of the SW 1/4 of the SE 1/4 of Section 36. There was no evidence in conflict with his location of the line. In fact, even the Tinnins' attorney at one point in the trial treated the term "West line of . . . H. Farrow . . . Estate" as synonymous with "the 40 line."
There is, however, a problem with that part of the description which states, "[T]hence West 20 yards more or less to another corner in lands of the Estate of H. *Page 753 
Farrow. . . ." It is undisputed that there is no corner at the point so described and that the call in the description should read 429.92 feet to reach the corner intended. Mr. Smith's survey located the corner at that point. Voyan Farrow, H. Farrow's son, testified that the corner was marked at that point by an iron pipe and two or three rocks. The description in the deed was inconsistent but the inconsistency is corrected by the call's reference to an established corner. Where there are inconsistent recitals in a deed, the more certain description will control. See 26 C.J.S. Deeds § 100m. A call for an established corner thus prevails over a call for a distance. Consequently, this error provided no basis for declaring the deed void for uncertainty.
On examining the record, we find that the errors and ambiguities discussed above should not have prevented the trial court from determining the location of the land described but rather that the description, with these errors and ambiguities resolved, should have enabled the trial court to locate the property described. Consequently, we hold that the deed was not void for uncertainty.
Furthermore, we find that the description in the deed to the Jordans included the disputed property. Consequently, the exclusion in the Tinnins' deed excluded the disputed property.
As we have already shown, the beginning point of the description was definitely located by the undisputed testimony of Mr. Smith, the surveyor. The north line of the property was definite in the description, since it was located by its description on a government survey line.
The west line of the land was described as ". . . the line of lands of grantees C.M. Jordan Sr. and wife Hattie M. Jordan. . . ." In other words, the western boundary was the eastern boundary of land already owned by the Jordans.
 "Where land or a call for a description is given by reference to abutting land or monuments the description is good if the abutting lines can be accurately determined. . . ."
6 Thompson on Real Property § 3032 (1962).
The undisputed evidence showed that the east boundary of the Jordans' property for part of the distance to Wesobulga Creek was that shown by a 1956 deed by which E.B. Farrow and his wife Ada conveyed to the Jordans a narrow strip of land laying on the east side of Berry Hill Branch. The uncontradicted testimony of Mr. Jordan showed further that for the remainder of the distance to the creek the boundary was the branch itself. The Tinnins do not argue that this boundary is uncertain.
We note at this point, for the purpose of showing that the description in the deed to the Jordans circumscribed the disputed land, that the western boundary of the disputed property is a branch running into Wesobulga Creek and that the evidence showed that that branch is the Berry Hill Branch.
The southern boundary of the property described in the deed to the Jordans was given as Wesobulga Creek. The creek is the southern boundary of the disputed property. As noted above, the trial court found the location of the creek definite enough to use in its description of the property awarded to the Tinnins. Likewise, it should suffice for the Jordans.
We have already shown that the west line of the H. Farrow Estate, which formed one eastern boundary of the land described in the Jordans' deed, was definitely located on the east line of the SW 1/4 of the SE 1/4 of Section 36. That line is the eastern boundary of the disputed property.
That line ran north into the NW 1/4 of the SE 1/4 to a corner of the lands of the H. Farrow Estate. Mr. Smith's survey located that corner on the forty line, which is the north boundary of the disputed property.
From that corner, the description reads "West 20 yards more or less to another corner in lands of the Estate of H. Farrow." We have already discussed the problem raised by this description and have shown that it was resolved by undisputed evidence. *Page 754 
From that corner, the description reads north to the point of beginning.
Thus, from our study of the record, we find that the trial court's judgment was not supported by the evidence and that the great weight of the evidence supported the Jordans' claim of record title.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, ALMON and EMBRY, JJ., concur.